Case 16-4054 and 16-4094, Paul Matus v. Lorain County General Health, et al. Oral argument, 15 minutes per side. Mr. Beck for the Appellant Cross-Appellee. May it please the Court, Your Honor, I would like to reserve three minutes for rebuttal. Very well. Ms. Metzinger. Your Honor, as we present on behalf of the Lorain County General Health District 3 separate issues for review that stem from a jury verdict that occurred last year. Can you keep your voice up? Yes. The issues that we present to the Court for review deal with judgments as a matter of law. We move for essentially a directive verdict or judgment of a matter of law at the end of both the plaintiff's case and our case and then also through a motion for new trial. And when we distill the case down, it came down to a retaliation claim and a breach of contract claim stemming from the termination of the plaintiff as medical director. And I would like to address both issues, but the Court submitted a letter on the issue of the impact of 3709-13, and I'd like to address that first. Our position is and has always been that the medical director in any health district is not classified. And that is because if you look at 3709-11, the medical director position in a health district is only created if the health commissioner is not a licensed physician. I mean, when you read that statute, it says the Board of Health shall appoint a medical director when the health commissioner, who is in charge of all the public health, is not a licensed physician. So our position is that this is essentially an offshoot of the health commissioner's position, who is clearly an unclassified position. Now, also in public sectors, the Court may know, you don't normally enter into a contract with a classified employee because you don't have to. Those rights are actually embedded in Title 124. So you have essentially a perpetual employment and separation only for cause. So what situations arise when you're going to have a contract is when the person is unclassified. And in this case, in Lorain County, this medical director had been under contract for years. When he was the coroner, he volunteered and did work as the medical director. When he left the coroner's office, they entered into a series of contracts with him. So he is unclassified. My colleagues, in their response to the Court's question, agree he was unclassified. He was not classified, that he's unclassified. In other words, in my colleagues' response brief to the Court's letter, they also agree that the medical director was not classified. So the issue becomes the contract. And as we set forth in our brief and we've maintained at the trial court level throughout our motion for summary judgment and at the trial, that this particular contract was simply void. And that goes back to the Davidson v. Sheffield case, which we think is very important because that arose from Lorain County, and it was an opinion from the 9th District, which this whole situation arose from, which under Ohio law would, of course, be sort of a binding precedent for that particular district. And that court, in a very similar— Why did they have one in it if it was void? Well, they made a contract in this case similar to the one that they did in Sheffield, which said that it's a perpetual contract. In other words, it's automatically renewable, what we would call evergreen in the commercial setting, which was the similar situation that they had in Sheffield. And what the Court analyzed at that point was that type of contract is inconsistent with the legislative process of creating these two different classifications, that it is prohibited to create a classified status through contract. So this particular contract would be void as a matter of law. What about the provisions that say that they can hire? I mean, so when they hire people, what position do these people have? Well, you're correct. In 3709.13, Your Honor, it says on the recommendation of the health commissioner, certain individuals may be hired, including nurses and aides and even physicians, because sometimes medical assistance through clinics and so forth are done by physicians who are not medical directors. But under 3709.11, that particular hiring of a medical director is a shall provision. In other words, the Board of Health must hire a medical director in the event the health commissioner is not a licensed physician. So the demarcation is clear. If the health commissioner says, I need a physician to help run this clinic, or I need to hire a nurse for something like that, that is a recommendation, and then the Board may or may not do that. That physician that could be hired under that statute would be in a classified status, because that's at the recommendation of the health commissioner to help run some aspect of the health district. But this situation, the medical director's position, is not created under that statute. That position is not created as a result of a recommendation of the health commissioner. That's created by statutory mandate. And in this case, and for decades in Lorain County, the health commissioner was not a licensed physician. So there had to be the appointment of a medical director who we believe was unclassified. But even if we were to look at this contract and make the argument that it would somehow be binding in how it was written and the manner in which the plaintiff could be terminated, we believe that the evidence at the trial established that there was cause. And, in fact, this all relates back to these two independent investigations, one stemming from claims against the plaintiff that was investigated at the recommendation of the prosecutor by an outside source. That investigation ended, we know, on the report was completed on December 7th, 2012. The evidence is clear on that because that's the date of the report. It's received by the district on December 13th. The plaintiff is advised of the outcome of that the next day on December 14th. And then for whatever reason, 23 days later, he makes a call to the ex-husband of the central complaining witness, which creates this next investigation because that person, that Stephanie Charles, she found out immediately from her ex-husband that the call had been made. She was offended. She reported it as a retaliation, which then created a separate investigation. And everyone testified at the trial that the termination was based upon the retaliatory conduct created by the phone call and had nothing to do with anything involving the original investigation because the original investigation, as much as the plaintiffs were upset with it and thought it was done poorly and took too long and he should have been notified about it, he was not disciplined as a result of that. And his termination was only related to his – a phone call that was of such magnitude that it would be a reason for termination. Well, that was an issue in the case, of course. Yeah. I'm just wondering about why your clients, for lack of a better way to put it, made such a big deal out of that phone call. Well, this takes us back to the Supreme Court's position in Burlington v. White and the project that has come forward, and that is the retaliation goes far beyond just things that may happen to you in the workplace. This particular call was 52 minutes long. The person who received the call, Dave Charles, was so offended by it he called his ex-wife immediately and reported it to her. The doctor making the phone call didn't have the power to terminate or adversely affect the employment of the wife of the individual he was calling, did he? He did not, but he was – What was important about the phone call other than the fact that somebody may have been offended or their feelings might have been hurt? Well, in the record is – or the defendants' exhibits why, and these are actually letters prepared by the plaintiff that he was – and questions that he was going to actually give to the board had he met with them three days later. I mean the sequence was he makes the call on Sunday night on January 6th anticipating he's going to show up at the board meeting on Wednesday, January 9th, and what he was looking for was negative, bad information about the central complaining witness. So he then writes letters – How would he be thinking that the woman's husband was going to give him bad information on his own wife, and then by calling the husband he's calling someone that he had previously been friends with or may even have been friends with at that time? I just don't understand the whole thing as to why your client made something on that phone call. Part of the plaintiff's whole case and the attack on – which was really an attack on Stephanie Charles was that she was a woman that had been engaged in extramarital relationships. They brought in witnesses that challenged and attacked her character. He accused her in Exhibit Y of false allegations, collusion, false accusations, a shameful attack. You mean the plaintiff? The plaintiff. In other words, he was going to go to this meeting on January 9th and essentially engage in character assassination, and a person of his stature – What do you mean character assassination? I thought what he was doing was denying that he had sexually harassed the woman because she claimed he had sat too close to her or something like that. What's all this about character? That's my whole point, Your Honor. That investigation was done. In other words, there was no adverse reaction that came from this. This was a trial, and you're arguing the facts. Sure, that was your position, but there was also testimony that, no, it wasn't really done. It hadn't been completely resolved. He was still supposed to – he was going to be presented with the report, which he had not yet received, and he was going to be able to address the board. I mean there's testimony on the other side. There is, Your Honor, but our other position with respect to this is that the retaliation claim presupposes that the plaintiff was in some sort of protected status when he made that phone call. In other words, he would have to show that he had made a complaint, that he was participating in an investigation at that time, and that we knew about it. In other words, if we look at the prongs to prove retaliation, he has to be in protected status. We have to know that he's in protected status, which we didn't, because we interpreted that call, based upon the complaint of the central complaining witness, as retaliatory against her. He claims that that's somehow protected status, but that's not how we interpreted it. Well, but he was – Of course, the jury heard all this stuff. Yeah, the jury did hear it, and he was also investigating, and you also have even the husband saying that, you know, he asked me once about, is this something that she would make up? And I said no, and, you know, yeah, and then we talked about other things. Well, actually the husband said, Your Honor, at trial that he must have been asked 13 or 14 times by the plaintiff whether she was the person who would lie. Also, the husband said in his deposition, which he confirmed at the actual trial,  I mean, this was a search for negative information about her, because the inquiry was, is she the type of person that would lie and make up stories? That was the approach, because he wanted to take that to the board. And my point is that he knew that Stephanie Charles was the person that did this, but my point is, Your Honor, their retaliation claim in their amended complaint was centered not on that phone call. It was centered on a meeting that happened on January 11th. Our whole defense of the case was built on the fact that the retaliation claim supposedly stemmed from a singular meeting that he had with three gentlemen on behalf of the board in which they told him about this situation and the problems created by the phone call. In the trial, the trial judge decided that everything should be open now. He was in protective status, even though in his summary judgment ruling, he clearly set forth that the phone call was not a situation in which he was in protective status, and because of that. Not a situation he what? It was not a situation in which he, the trial judge in the motion for summary judgment order said that the phone call was not a situation where the plaintiff was in protected status. In other words, that was not protected. He changes that in the trial. It comes out. It happens all the time. Things develop in the trial, and you correct yourself. That's true, except in this particular case, and I see my time is up, and I'll finish here. In this particular case, from opening statement through every witness that we brought up before the court said that, we established that the only reason that he was disciplined was because of this phone call. And then, at the end, the plaintiff is allowed to rope that back in, and we have always maintained that he was not in protected status, and that phone call was inappropriate, and that the retaliation claim should fail. So really, if we distill your argument down to what it is you're arguing on appeal here, it's simply that the verdict is against the weight of the evidence. Is that really what you're saying here? And that it never should have been submitted to the jury in the first place, because of the law that guides retaliation under Ohio law, which is similar to federal law, and the fact that there was no proof of no just cause. When you come back up, I'm going to be asking you about whether it should be 250 or 350. I was just going to ask him that. Thank you. I will address that. If we wait, I'd kind of like to ask him that now. This issue of whether the statute, with the cap on compensatory damages, means the remitted should be down to 250,000 or 350,000, I want to ask you this now so your opponent would have the benefit of your comments, if you have anything to say about that. I do, Your Honor. I think there's a very specific, under Ohio tort law, there's a very specific set of circumstances that occur when you can have non-economic damages extend to 350. But that doesn't apply to a political subdivision. A political subdivision is guided under 2744.05c. That particular provision of Ohio law says that if the claim for non-economic loss is against a political subdivision, the most that can be awarded is $250,000. Say that again. If there is a judgment against a political subdivision in tort, which this situation would be, the maximum. There's a judgment in what? If there is a judgment against a political subdivision, such as a health district, the most the judgment can be for non-economic loss, like in this case for damages, is $250,000. There is no additional cap added when the defendant is a political subdivision. But I guess the question that I have for me is that there was economic loss. There was $325,000, whatever the exact figure was, in economic loss that was awarded, and the only reason it wasn't included in the second portion of the verdict is because the judge instructed the jury that if you award economic damages under the first question, don't repeat them in the tort portion, right? Yes. So then why isn't it the case with economic damages? Well, the breach of contract claim and his lost wages set up the economic loss. The cap has to do with non-economic loss. Aren't you entitled to—I thought there were two different caps, that if there's no economic loss, then it's $250,000, but if there is economic loss, then it's $350,000 or something like that? No, if there is economic loss, that can be an unlimited amount. In other words, if there's clear economic loss, even if it's— No, but I thought that there were two different limits on the non-economic portion. Not with respect to a political subdivision, only with respect to anybody that's not a political subdivision. That's regulated by a different—that's in Title 23. That's a different tort section. Okay, so you're relying on 2705, you said? 2744.05C. 2744.05C. Yes. And that has a limit that is—it's a single limit, and it has—it doesn't matter whether you've suffered any economic loss. Correct. It has to do with non-economic loss, which would be this particular situation that we're dealing with here. That section, Your Honor, reads, there shall not be any limitation on compensatory damages that represent actual loss to a person. Okay. That would be economic loss. However, except in wrongful death actions, damages that arise that do not represent the actual loss of a person who is awarded those damages shall not exceed $250,000. So that's the statutory cap for a political subdivision such as a health district. Okay, thank you. Thank you. Have your rebuttal time. I understand. Good morning, Your Honors. May it please the Court. My name is David Kulpich, and I represent the plaintiff, Apolli Crossapone. I'm going to address the issue on the economic damages and the remitter. I believe that the proper reduction was not $250,000. It was $350,000. Addressing 2744.05— Don't— Yeah, I'm sorry. 27 what? 2744.05, which is what Mr. Beck just addressed. That statute does not prohibit or does not limit damages in causes of action that are causally connected to one's employment. So the statute doesn't apply to a case involving an employment relationship. And the cases that we have cited to support that proposition would be the Henderhan v. Jackson Township case, Ogilvie, and there's Gessler v. Union. Why don't you do the cites for those when you read those out? It's actually my fourth brief, but I'm happy to give the—at page 22 of my fourth brief, those cases are cited out. My third brief. Thank you. No, it's my fourth brief. It's my fourth brief. Henderhan is 2009, Ohio, 949. Ogilvie is 2010, Ohio, 1913. And Gessler v. Union is 159, Ohio, App. 3rd, 43. So I would submit that that statute doesn't apply. I would also submit that the statute that has been under discussion that limits non-economic damages to either $250,000 or $350,000, the $350,000 limit would be the proper limit because in this case we do have $365,000 in economic damages. Judge Nugent did, in fact, instruct the jury not to award duplicative damages, and I only asked for economic damages in the amount of the $365,000. Mr. Beck, in his brief, his supplemental brief, makes, I think, a decent point when he makes the argument that there was a merger of the breach of contract claim and the retaliation claim. I don't completely agree with that, but there was, in fact, a merger of the types of damages, economic damages, that we were seeking arising from the breach of contract claim and the retaliation claim, and that was lost wages, back pay, front pay, lost benefits. So I believe it's very clear that the economic damages were $365,000, and under the statute, non-economic damages are three times the amount of economic damages or $350,000, whichever, to a maximum of $350,000. That's by statute. I'm sorry? That's by statute. That's by statute, Your Honor. Yes. Are you claiming that your client had a contract or not? That's a problem here, whether it's classified or not. I am claiming that his contract was pursuant to a statute, and that was initially, the contract itself says it was pursuant to 3709.11. I don't think that makes him classified or unclassified. I think that statute gives him a contract and gives him contract rights. There's no limits in that statute that prevents or prohibits the health district from giving the medical director a continuing and indefinite contract. 3709.11. 3709.11, Your Honor. That's the statute that states that if the health commissioner is not a medical director, then the board must appoint or retain a medical director. And you don't think that the other statute applies at all, the last sentence of the other statute? Well, I think it does. If the medical director is to be considered either classified or unclassified, our first position is he's neither, he's simply contracted. Do you have any cases of an employee who's neither? No, I don't. Is there any law regarding being something other than one or the other? I have not seen any cases to that extent. So if this court finds that he has to be one or the other, then I would submit that the statute 3709.13 would put him in the classified civil service, which means either by contract. His rights are that he has a continuing indefinite contract that can only be terminated by or with cause or pursuant to the statute. He has a continuing indefinite contract that can only be terminated with cause. So either way you look at it, from my perspective, he can only be terminated with cause. And in this case, I think the jury very clearly found that he was terminated without cause. I think the jury found that his call to Dave Charles was participating in any investigation under the Ohio Revised Code. And I think there was other acts that Dr. Mattis engaged in and participated in, and there were other instances of retaliation that the health district imposed upon him. But I think the big issue, because Mr. Beck has basically stated he was fired for making the phone call, that that is the determining factor under the retaliation claim. I do want to make a point with respect to my retaliation claim, too. There's, I think, a significant difference between the federal statute, Title VII, and Ohio Revised Code 411202I. A close reading of the federal statute compared to the Ohio Revised Code, in my view, would lead this court to conclude that any participation in any investigation is subject to protected status. In other words, there's an argument under the federal statute that it has to be an Equal Employment Opportunity Commission investigation. That's because Title VII has to be an investigation, participating in an investigation where there's an EEOC investigation going on. Ohio, I think, is broader than that. Ohio states that an employee is protected if he is participating in any investigation. It can be EEOC, OCRC, and an employment-based, an employee-based investigation. I wanted to make that point because I think Ohio law is broader than federal law. That's why we brought the Ohio claim. Because he was participating in an investigation. It was ongoing. Dave Colville told him, you're coming back to talk to the board. Jerry Ennis told him, you'll be back, it'll be over in a month. Dr. Mattis was preparing to participate and to have further discussions with the board. It was ongoing. So I think the retaliation claim under Ohio law is much broader than what my colleague on the defense side has suggested. And there clearly was no retaliation in the phone call because there was no impact on Stephanie Charles's employment. Retaliation had to do with a phone call or was it more than that? Well, I think, well, Dr. Mattis clearly was retaliated against. He was fired because he made that phone call. The health district has made that point from day one. That was the reason for his discharge. So it was the phone call and that was the determining factor. And the jury found that that phone call was not retaliatory. It was not inappropriate. It was not misconduct. And so the flip side to that coin is it's the determining factor for participating in any investigation. Was the jury asked those questions? The jury was not asked any questions. It was simply the jury was given instructions. There were no interrogatories. There were no jury interrogatories. So the jury was not asked those kind of questions. And so your first position is that he's neither classified nor unclassified. And therefore the contract as it was written by the prosecutor's office for a continuing indefinite period of time with very specific provisions as to how Dr. Mattis can be terminated for cause applies on its face. All parties relied on this contract. All parties proceeded as if this contract was in place, as if it was applicable. My second position is if in fact this court determines you can't have it both ways, it's either they're classified or they're unclassified, then the statute 3709.13 puts him in the classified civil service. And based on that, he can only be terminated. Does that mean that the job has to be competitive? No. No, because there's another statute which indicates when his job has to be competitive. And I think that was the statute that was cited in that Davidson case. And I believe the Davidson case, I don't believe there was a statute which authorized the mayor to appoint an administrative assistant. He had the authority under just being a mayor to hire employees. But there wasn't a specific statute saying the mayor shall appoint an administrative assistant, as we have in this case where 3709.11 states if the health commissioner is not a medical director or doesn't hold a medical degree, then the board shall appoint a medical director. So I think either way. This section that opposing counsel is relying on the remitted issue applies. I know you say it doesn't because of the nature of the claim. But if it does apply, do you agree then that 250 is correct? No. No, I don't. My first position, the statute that we're referring to, and that would be 2315.18, my first position is that that statute is a jurisdictional limit that only applies to common police courts. And that's stated in the statute. So the first thing I'm really asking this court is to reinstate the jury verdict of $1 million back in whole. We believe the common police court perhaps didn't have jurisdiction to enter a judgment in excess of the 350. But the federal court, there's no limit on the federal court's jurisdiction. My second position is the statute, to the extent it applies, it is a 350. My client is entitled to 350 because the economic damages were $365,000. Okay, but if there's a separate statute applicable to municipalities, if that applies, then the number is 250? If it applies, then, yeah. Because that statute, if it applies, then it would be 250. But that statute does not apply to a situation that arises out of or relates to an employee's- And you're saying that this is a procedural rule, not a substantive rule? I think, no. When I'm referring to 2315.18, which is the statute that has the 250 and the 350- No, but I understand you to be saying that that only applies in state court, that it doesn't apply in federal court. Are you saying that? I am saying that. Do you have any cases that would support that? I don't have any. I know the federal courts have applied that statute. I have not seen a single federal court that has applied that statute in light of an argument that's in the statute that says it's a jurisdictional question. So I will acknowledge that the courts have applied the statute. I'm making an additional argument that I haven't seen before. And you say it's jurisdictional, but the court you're referring to is the trial court of general jurisdiction? The Ohio-Lorraine County Court of Common Pleas. That's the general jurisdiction? Yes, that is correct. That is correct. But that's where we initially filed, and it was removed to federal court. So we're talking about two different statutes, and I think 2315-18 has the 250-350 distinction. First, my argument is it doesn't apply because it's jurisdictional to the common pleas court. The second argument is we have economic damages in excess of $365,000, so the cap would be 350. The statute that Mr. Beck raised moments ago, my response to that, and we're talking about 2744.05, is that it does not apply to causes of action that are causally connected to one's employment. And those are the cases that I referenced earlier today. Because we're dealing with a couple different statutes, I think it just got a little bit unclear in my argument, so I apologize for that. We also are seeking reversal of the trial court's decision on the motions for summary judgment. We believe that, based on all of the evidence of reasonably prudent jury, could have determined that there were fact issues with the First Amendment claim, the hostile work environment claim, and the intentional infliction of emotional distress claim. Well, would there be any more damages for those? Because wouldn't those all be... The answer to that is there wouldn't be any additional economic damages or non-economic damages, but if the First Amendment claim was reversed, we would have the opportunity to seek our attorney fees under 42 U.S.C. I think it's 1988. But there is an attorney fee component to the First Amendment claim. So we are seeking reversal of the summary judgment motion. And I see my time is up. Thank you. Thank you. Any rebuttal? To answer Judge White's question, I think this is all substantive issues, and I think it was, of course, Judge Nugent exercising a supplementary jurisdiction, so Ohio law would apply to this, the Ohio procedure would apply to this. With respect to the contract, again, we have taken a position that he was unclassified. And what we did was we proved cause, and they never proved the pretext piece of the case. In other words, when you look at this, this investigation with respect to the retaliation, the phone call was outsourced, and he had a hearing in front of an independent labor lawyer who also found that this conduct, this call was misconduct. And he defined misconduct as a breach of duty, breach of policy. And so the board all testified that we fired him based upon the phone call and the conclusion reached by the independent fact finder. So this wasn't the board going off on a lark or something. I mean, they actually relied upon facts that were determined by an independent fact finder, because that was the sequence. He was told about this situation in late January. There was a full-day administrative hearing before a labor lawyer on all of these allegations, and the fact finder found that the phone call was misconduct. It was based on that finding that the court, that the health district then discharged him. And my position was, and the reason I thought that we aren't tied to judgment as a matter of law, was that there was no issue of establishing any type of pretext. Everybody admitted, including the plaintiff, that he actually made the phone call. And what was in dispute, I suppose, is the nature of that. But again, the board relied upon not only its own understanding of what happened, but the specific findings of the fact finder. So we feel that there was cause for this termination on the contract claim, and of course we've always taken the position that he was not in protected status at the time that he made the phone call. In fact, his complaint doesn't even say that. His complaint doesn't even relate that. It was only in the middle of the defense case that Judge Nugent reopened it and said, well, I think this is all open for discussion. I think it's all possible investigation, and you can argue that to the jury. But by that time, our feet had already been planted because we had definitively said Our whole defense was based upon the phone call, the investigation, and that was the cause. So that was the problem that was created by the dynamics of the case. So our request, again, is that the court reverse the decision of the trial court and enter judgment as a matter of law as to both claims. Thank you. Thank you, and the case is submitted. There being no further cases for argument, court may be adjourned.